UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Office of the Public Guardian</u>

   v.

<u>Elliot Hospital, et al</u>.

Civil No. 21-cv-705-LM
Opinion No. 2022 DNH 110 P


**O R D E R**

The Office of the Public Guardian, in its capacity as guardian of Seth

Brunelle, sues defendants Hillsborough County (the "County"), Elliot Hospital, and

Joey Scollan, Doctor of Osteopathic Medicine.  Against the County, the Guardian

brings a claim under 42 U.S.C. § 1983, alleging that the County's employees

violated Brunelle's rights under the Fourteenth Amendment while he was detained

at the Hillsborough County House of Corrections—known as Valley Street Jail—in

the summer of 2018.  See Monell v. Dep't of Soc. Servs. of Cty. of N.Y., 436 U.S. 658

(1978).[1]  The County moved for judgment on the pleadings under Federal Rule of

Civil Procedure 12(c), arguing that the Guardian failed to allege that the County's

employees acted pursuant to a custom or policy attributable to the County.  Doc. no.

18.  In response, the Guardian moves to amend its complaint to allege that the

employees' violations of Brunelle's rights were the result of the County's policies

---

[1] The Guardian originally alleged claims under the First and Eighth
Amendments against the County.  The County moved for judgment on these claims,
and the Guardian did not object to the motion as it applied to them.  The Guardian's
amended complaint does not include claims under the First and Eighth
Amendments against the County.

and customs.  Doc. no. 21.  The County objects to the motion to amend, arguing both that it is untimely and that the additional allegations would be futile.[2]  For the following reasons, the court grants the motion to amend and denies the motion for judgment on the pleadings as moot.

## STANDARD OF REVIEW

This order deals with two pending motions, the County's motion for judgment on the pleadings under Rule 12(c) and the Guardian's motion to amend, which the County contests on the grounds it would be futile and untimely.  The standard for review on a motion for judgment on the pleadings is the same as for a motion to dismiss under Rule 12(b)(6).  See Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006).  Likewise, the standard for determining whether a motion to amend is futile is the same as the Rule 12(b)(6) standard.  See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  In its motion for judgment on the pleadings, the County asserts the same legal arguments it makes in its objection on grounds of futility.  Accordingly, the court analyzes the allegations in the proposed amended complaint to determine whether they are sufficient to state a claim under Rule 12(b)(6).  See id. ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.").

---

[2] The other defendants in this case, Elliot Hospital and Dr. Scollan, have not objected to the motion to amend.

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

The allegations in the proposed amended complaint relate to Brunelle's treatment, or lack thereof, at Elliot Hospital and Valley Street Jail in July and August 2018.  Prior to this time, Brunelle had a long history of psychiatric and substance use issues, including being hospitalized on numerous occasions for mania, psychosis, catatonia, and physically aggressive behavior.  His medical providers had historically treated these conditions with medications including Lithium, Depakote, Gabapentin, and Lorazepam.  Brunelle had also consistently received electroconvulsive therapy over the eight years before the summer of 2018.  That summer, he was receiving electroconvulsive therapy on a weekly basis.

Prior to July 19, 2018, Brunelle was being held at the New Hampshire State Hospital.  On July 19, the State Hospital conditionally discharged Brunelle to

Westbridge, a residential treatment facility in Manchester.  At the time Brunelle was at Westbridge, he was subject to certain bail conditions.  On July 24, Brunelle's mental condition started to deteriorate, and he refused to take his medications. Westbridge determined that it could no longer treat Brunelle.  It discharged him and arranged for his transportation to the Elliot Hospital emergency room.  Later that evening, the Manchester Police Department arrested Brunelle, claiming he violated one of his bail conditions.  The police transferred Brunelle to Valley Street Jail that night.

Brunelle arrived at Valley Street Jail around 10:55 pm.  At that time, staff from the Manchester Police Department left a voicemail with Brunelle's parents, who were then his legal guardians, notifying them that Brunelle had just arrived at the jail.  After listening to the message, Brunelle's parents called the jail and spoke to the nurse on call.  Brunelle's parents informed the nurse that Brunelle had a mental health condition and required medications and electroconvulsive therapy to treat his illness.  The nurse stated that she did not receive documentation that Brunelle had a mental health diagnosis or information about his medications.  The nurse asked Brunelle's parents to drop off his medication the next morning, which they did.

At around 11:20 pm, the jail's staff noted that Brunelle urinated on the floor in the booking department, refused to speak to anyone, and stared straight forward. The staff placed him on suicide watch.

Brunelle remained at the jail for about three weeks—until August 13, 2018—
when he was released to the State Hospital.[3]  While Brunelle remained at the jail,
the staff made no effort to move him to the State Hospital.  Moreover, staff made no
attempt to facilitate his electroconvulsive therapy—even though they were aware
that electroconvulsive therapy was necessary to alleviate Brunelle's symptoms.
Further, despite knowing that Brunelle required medication, staff took no action in
response to Brunelle's refusal to take his medication.  Throughout his stay, staff
kept Brunelle in isolation and on suicide watch.  While he was detained, Brunelle
spent significant amounts of time naked or in a restraining jacket.  In response to
his continuing mental deterioration, staff confined him to a restraining chair for
many hours.

## DISCUSSION

Currently before the court are the County's motion for judgment on the
pleadings and the Guardian's motion to amend its complaint.  Because allowing the
proposed amended complaint would moot the County's motion for judgment on the
pleadings, the court first considers the motion to amend.  See Fujifilm N. Am. Corp.
v. M&R Printing Equip., Inc., 565 F. Supp. 3d 222, 227 (D.N.H. 2021).  The County
objects to the motion to amend on two grounds: (1) that it is untimely; and (2) that
even with the additional allegations, it fails to state a claim under § 1983.  As it is a

---

[3] It is not clear from the amended complaint who initiated Brunelle's transfer
from Valley Street Jail to the State Hospital, or under what legal mechanism they
did so.

preliminary issue, the court first considers whether the motion to amend is timely.
If it is, the court will consider whether the amended complaint states a § 1983 claim
under the Rule 12(b)(6) standard.

I.    <u>Timeliness of motion to amend</u>

The County first argues that the motion to amend is untimely because it was
filed after the deadline for amending pleadings in the scheduling order.  The
deadline for amendments was February 1, 2022, and the Guardian filed its motion
on March 2, 2022.  Because the Guardian filed the motion to amend after the
scheduling deadline, the more stringent "good cause" standard under Federal Rule
of Civil Procedure 16(b)—rather than the liberal "freely given" standard under Rule
15—applies.  <u>O'Connell v. Hyatt Hotels of P.R.</u>, 357 F.3d 152, 154-55 (1st Cir. 2004).
The good cause standard emphasizes the diligence of the plaintiff in seeking
amendment.  <u>Id.</u> at 155.  Prejudice to the opposing party is relevant but secondary
to the moving party's diligence.  <u>Id.</u>  Granting a motion to amend under this
standard is within the court's discretion.  <u>Id.</u>

The court finds good cause to grant the motion to amend in this case.  As to
diligence, the County moved for judgment on the grounds the Guardian's
allegations were deficient.  The Guardian then promptly moved to amend its
complaint to cure this deficiency.  The court finds the Guardian acted diligently.
<u>See</u> <u>Frost v. Suffolk Constr. Co. Inc.</u>, No. 18-CV-11578-DJC, 2020 WL 7353403, at
*5 (D. Mass. Dec. 15, 2020) ("Given the sequence of events, particularly the timing

of the motion to amend on the heels of Vynorius's motion for judgment on

the pleadings, the Court does not conclude that Sunbelt failed to act diligently" in

moving to amend its complaint).  As to prejudice, the Guardian filed the motion to

amend one month after the scheduling deadline.  Moreover, the new allegations

clarify the Guardian's claim rather than add a new cause of action or theory to the

case.  In these circumstances, the amendment will not significantly prejudice the

County.  Accordingly, the court finds good cause to allow the motion under Rule

16(b).

II.   <u>Sufficiency of § 1983 claim</u>

The Guardian alleges that Brunelle's treatment at Valley Street Jail violated

his due process rights under the Fourteenth Amendment to receive adequate

medical care while in pretrial confinement.  <u>See</u> Burrell v. Hampshire Cnty., 307

F.3d 1, 7 (1st Cir. 2002).  The Guardian further alleges that the County was

responsible for these violations because it maintained policies and customs related

to inmates with mental health issues that resulted in its employees violating

Brunelle's constitutional rights.  The County argues that the Guardian's allegations

regarding the existence of policies and customs are conclusory and therefore

insufficient to state a claim for relief.  In addition, the County argues that the

Guardian has failed to sufficiently plead that the alleged policies and customs

caused Brunelle's alleged constitutional deprivations.

Under § 1983 individuals may bring lawsuits against "any person" who, acting under the color of state law, deprived the individual of any right or privilege guaranteed by federal law.  42 U.S.C. § 1983.  Municipalities and local governments, such as counties, are "persons" within the meaning of § 1983.  See Monell, 436 U.S. at 690; see also Glenn v. Hillsborough Cnty. Dep't of Corrs., No. 06-cv-99-PB, 2006 WL 3308365 (D.N.H. Nov. 13, 2006) (noting that New Hampshire counties are local governments under RSA 507-B:1).

Local governments' liability, however, cannot be based on the torts of their employees and agents under a respondeat superior theory.  See Monell, 436 U.S. at 694-95.  Rather, a local government is only liable when the plaintiff's injury is the result of the execution of the government's policies or customs, whether made by its lawmakers or those whose acts may fairly be said to represent official policy.  Id.  Municipal liability may be based on either an official policy or an unofficial policy or custom that municipal officials both knew of and tolerated to such an extent that they essentially adopted it as official policy.  Id.  In either case, the plaintiff must show that it was the cause of and the "moving force" behind the deprivation of constitutional rights.  Miller v. Kennebec Cnty., 219 F.3d 8, 12 (1st Cir. 2000).  Thus, there are three elements to a § 1983 claim against a municipality: (1) a violation of the constitution or federal law; (2) a custom or policy of the municipality; and (3) causation between the custom or policy and the constitutional deprivation.

Here, the Guardian alleges that the County maintained the following "de facto policies" and customs:

A. A custom, practice or policy of substituting restraints for proper medical treatment for inmates suffering from mental illness.

B. A custom, practice or policy of refusing or not administering psychiatric or psychotropic medication to inmates that had been legally prescribed such medication prior to their being incarcerated.

C. A custom, practice or policy of refusing or delaying prescribed and necessary treatment outside of the confines of the jail itself.

D. A custom, practice or policy of not providing processing of Involuntary Admission to the New Hampshire Hospital when plainly and urgently necessary.

E. A custom practice or policy of not employing or contracting a psychiatrist or other licensed physician who could examine inmates and prescribe proper medication.

F. A custom, practice or policy of not providing injectable medications for mentally ill inmates.

G. A failure to train and educate medical and correctional staff in the proper care and treatment of inmates suffering mental health issues.

Doc. no. 21-1.  As explained further below, the court finds that allegations A-D and F are sufficient to state a § 1983 claim based on unofficial policies or customs.  In addition, allegation E sufficiently states a § 1983 claim for municipal liability based on official policy.  Finally, allegation G sufficiently states a § 1983 claim based on a failure to train.  The court addresses each category of allegations below.[4]

_____

[4] The County does not move for judgment on the pleadings on the grounds that the injuries Brunelle allegedly suffered did not constitute violations of the

A.    Allegations A-D and F

The court first considers whether allegations A-D and F, all of which concern allegedly unofficial policies or customs, sufficiently state a claim for municipal liability under § 1983. In other words, the court must consider whether the Guardian has sufficiently alleged that the County maintained unofficial policies or customs that were the "moving force" behind a deprivation of Brunelle's Fourteenth Amendment rights.

While establishing the existence of an official policy is straightforward because the municipality either did or did not maintain the policy, proving an unofficial policy or custom is more complicated. See Griego v. City of Albuquerque, 100 F. Supp. 3d 1192, 1215-16 (D.N.M. 2015). Although it concerns an unofficial custom, the plaintiff must still show that the municipality's tolerance of the custom was a deliberate policy decision by its leadership. See Miller, 219 F.3d at 12. To do so, the plaintiff must show that the custom was "so well settled and widespread that the policymaking officials of the municipality had either actual or constructive knowledge of it and yet did nothing to end the practice." Id. (quotations omitted). For this reason, establishing the existence of a municipal custom requires more than proof that a particular course of action happened on one occasion. Id.

---

Fourteenth Amendment, focusing instead on the lack of causation and allegations of policies and customs. Nevertheless, the court addresses whether the Guardian has sufficiently alleged a Fourteenth Amendment violation because it informs the causation issue.

While the existence of a custom or unofficial policy is a question of fact, "it is not a fact that can be baldly asserted at the pleading stage." Griego, 100 F. Supp. 3d at 1212-13. To adequately plead a custom or policy under Rule 12(b)(6), "[p]laintiffs cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015) (quotations omitted); see also Griego, 100 F. Supp. 3d at 1212-13. In other words, the plaintiff must allege sufficient facts to support an inference that a particular practice occurred enough times that municipal leaders should have reasonably been aware of the practice and still failed to take actions to stop their employees. See Miller, 219 F.3d at 12.

There are several ways a plaintiff can sufficiently plead and prove an unofficial policy or custom. For example, a plaintiff can allege that municipal employees acknowledged the existence of the unofficial policy or custom. See Griego, 100 F.Supp. at 1216. In the absence of such direct evidence, however, a plaintiff ordinarily meets the pleading standard for an unofficial policy or custom by alleging other instances of similar conduct that would give rise to an inference that policy makers knew of and tolerated the conduct. Page v. Mancuso, 999 F. Supp. 2d 269, 284 (D.D.C. 2013). For this reason, it is not sufficient for the plaintiff to merely allege that government officials harmed him, and then conclusorily allege that the officials acted pursuant to an unofficial policy or custom. See id. (finding that

11

plaintiff did not sufficiently plead a custom or unofficial policy where he alleged he was strip searched by D.C. police officers on two occasions without citing additional instances in which the police strip searched inmates).  Rather, the plaintiff "must plead what he or she knows—whether it is a number of incidents or some other evidence—that renders plausible the plaintiff's conclusion that there is a policy, custom, or practice in place." Griego, 100 F.Supp. 3d at 1216.

Here, the Guardian has not alleged that there were any other instances in which Valley Street Jail staff acted pursuant to the customs or practices in allegations A-D and F.  Nevertheless, the court finds that these allegations, viewed in the light most favorable to the Guardian, sufficiently plead unofficial customs or policies.  The Guardian has alleged that Brunelle was held at Valley Street Jail for three weeks and that a number of jail employees kept him in restraints for most of that time and failed to refer him to outside treatment or otherwise address his refusal to take his medications for the entirety of his stay.  This is not an instance in which the plaintiff was harmed by a particular act once or twice and for which there is no evidence of the government employees acting similarly in the past.  Cf. Page, 99 F. Supp. 2d at 284, supra.  Rather, this is an allegation of a systemic failure to provide treatment over an extended period.  This systemic and prolonged failure to provide adequate care is sufficient to show, at the pleading stage, that these practices were widespread enough that County officials either were aware (or should have been aware) of them.  Accordingly, allegations A-D and F sufficiently plead the existence of customs or policies at Valley Street Jail.

The court next considers whether the Guardian has adequately pleaded a violation of the Fourteenth Amendment.  The Guardian alleges that Brunelle's Fourteenth Amendment due process rights were violated because he did not receive adequate medical care while he was confined at Valley Street Jail.  The Fourteenth Amendment's Due Process Clause is at least as protective of pretrial detainees' rights as the Eighth Amendment's protections for individuals convicted of crimes. Burrell, 307 F.3d at 7.  The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and quotations omitted).  To prove a deliberate indifference claim, the prisoner must satisfy two prongs: "(1) an objective prong that requires proof of serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need."  Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014).

The objective prong contains two components.  First, the prisoner must demonstrate a "serious medical need."  Id.  This requires that "the need be one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id. (quotations omitted).  A serious medical need must create a substantial risk of harm if left untreated.  See Braggs v. Dunn, 257 F. Supp. 3d 1171, 1191 (M.D. Ala. 2017).  "While mere discomfort is insufficient to support

liability, unnecessary pain or suffering qualifies as serious harm." Id. (quotations and citations omitted).

Here, the Guardian has alleged that Brunelle had a long history of mental illness prior to incarceration. He was committed to the State Hospital until he was discharged to Westbridge. Westbridge then discharged him because it was unable to provide treatment given his deteriorating mental state. The Guardian further alleges that Brunelle's parents informed jail staff of his mental health history, and the need for medication and electroconvulsive therapy to properly treat him. These are sufficient allegations for the court to infer that medical professionals had diagnosed Brunelle with a serious medical need, and that jail officials were at least partially aware of his condition. Further, the Guardian alleges that Brunelle appeared catatonic upon first arriving at the jail, that he urinated on the floor, and that the jail staff kept him in isolation and in restraints throughout his stay. These are sufficient allegations that Brunelle was displaying signs of mental illness so severe that "even a lay person would easily recognize the necessity for a doctor's attention." Kosilek, 774 F.3d at 82. In addition, the allegations that Brunelle had a severe, untreated mental illness, and spent two weeks in restraints and isolation that may have been unnecessary had he received proper care, are sufficient to establish, at the pleading stage, that he suffered harm. See Braggs, 257 F. Supp. 3d at 1191.

The second component of the objective prong is that jail officials failed to provide adequate medical care. Kosilek, 774 F.3d at 82. This requirement "does not

impose on prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." Id. "Rather, the Constitution proscribes care that is so inadequate as to shock the conscience." Id. (quotations omitted). Accordingly, allegations that reflect a mere disagreement over the course of treatment fall short of a constitutional violation. Id. Here, the Guardian alleges that the jail staff provided no medical care to Brunelle. They did not refer him to a psychiatrist. And, despite knowing that he required electroconvulsive therapy and medications that he refused to take, they took no actions to facilitate his medical treatment. Rather, the Guardian alleges, they simply restrained and isolated him. These are sufficient allegations that jail officials failed to provide care for a serious medical need.

Next, the subjective prong of the test requires the prisoner to show that prison officials were deliberately indifferent to the prisoner's medical needs. Id. at 83. Deliberate indifference under the Eighth Amendment is equivalent to the standard for criminal recklessness, i.e., prison officials must be aware that failing to provide care will create a serious risk of harm to the prisoner and knowingly disregard that risk. See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994) (noting that this requirement is because the Eighth Amendment prohibits cruel and unusual punishments, not cruel and unusual conditions). Although the standard is subjective, prisoners can show officials' knowledge through evidence that the risk of failing to provide care under the circumstances would be obvious to any reasonable person. Id. at 842.

15

Here, the Guardian has sufficiently alleged that Brunelle had a serious medical need that should have been obvious to a layperson. Similarly, it has sufficiently alleged that the failure to treat this need resulted in Brunelle experiencing deteriorating mental health and prolonged periods in isolation and restraints. Based on these allegations, jail staff could witness the results of failing to provide medical care to Brunelle. The jail staff, however, did not provide any medical care to Brunelle. At this early stage of the case, these are sufficient allegations that Brunelle had a serious medical need that created a risk of harm and that jail staff were deliberately indifferent to that risk. Accordingly, the Guardian has sufficiently alleged that jail staff violated Brunelle's Fourteenth Amendment rights.

Finally, the court considers whether the alleged customs and practices caused the alleged constitutional deprivation. Without going through each allegation separately, allegations A-D and F all relate to either the existence of a practice that directly harmed Brunelle, such as placing him in restraints, or the absence of a practice to provide him medical care, such as refusing to refer him to an outside provider. These customs or practices are directly related to the alleged failure to provide Brunelle medical care. While each custom or practice may not, on its own, have been the moving force behind Brunelle's injuries, they worked together to deprive him of adequate medical care. Accordingly, the Guardian has sufficiently alleged causation.

In sum, the County has failed to show that allegations A-D and F fail to state a claim for municipal liability under § 1983.  The court thus grants the motion to amend as to these allegations.

B.      <u>Allegation E</u>

In allegation E, the Guardian alleges that the County has a "custom[,] practice[,] or policy of not employing or contracting a psychiatrist or other licensed physician who could examine inmates and prescribe proper medication."  Doc. 21-1 ¶ 44(E).  Again, the court concludes that the Guardian has sufficiently pleaded all three elements of a § 1983 claim against a municipality based on this allegation.

First, as to policy or custom, the allegation sufficiently pleads that the County maintained a policy of failing to maintain staff to examine and prescribe medications to inmates with mental health conditions.  Unlike allegations A-D and F, which concerned unofficial policies and customs, the decision whether to maintain this staff was essentially a policy decision of the County.  The County, or an individual with decision-making authority for the County, either did or did not employ a medical professional to provide psychiatric evaluations and prescribe medications at Valley Street Jail.  In contrast to customs, alleging an official policy is much simpler because the plaintiff only has to allege that the policy did or did not exist.  Here, the Guardian has sufficiently alleged that the County failed to maintain a medical professional to provide care to detainees at Valley Street Jail.

Second, as to a constitutional deprivation, the court has already concluded that the Guardian has sufficiently alleged a violation of the Fourteenth Amendment based on the failure to provide him adequate medical care while he was in pretrial confinement.

Third, the Guardian has sufficiently alleged causation with respect to this policy. The Guardian has alleged that the failure to provide medical care resulted, in part, from the County's failure to refer Brunelle to medical providers and adequately train its employees on how to treat inmates suffering from mental illness. At the pleadings stage, it is a reasonable inference that had the County maintained a medical professional at Valley Street Jail, he or she would have provided appropriate care to Brunelle. Of course, the failure to retain a medical professional might not have been the only cause of Brunelle's injuries and the County might have been able to avoid injuring Brunelle in other ways. But, together with the other alleged policies and customs, it contributed to the overall pattern of practices that caused Brunelle's lack of medical care. Accordingly, the Guardian has adequately pleaded causation with respect to this allegation.

In sum, the County has not shown that allegation E is insufficient to state a claim for municipal liability under § 1983. The court grants the motion to amend as to this allegation.

C.      Allegation G

Finally, the Guardian alleges that the County failed to "train and educate medical and correctional staff in the proper care and treatment of inmates suffering from mental health issues." Doc. 21-1 ¶ 44(G). A municipality may be liable under § 1983 if its employee's violation of an individual's rights is connected to the municipality's failure to adequately train its employees. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). As with other forms of municipal liability under § 1983, the municipality's failure to train must stem from its deliberate adoption or acceptance of policies or customs. Id. at 389.

For a city to deliberately adopt a policy of failing to train its employees, it must have been aware of the need for training and nevertheless decided against providing it. Id. In other words, the municipality must have been deliberately indifferent to the potential harms the lack of training could cause. Id. In addition, the municipality's failure to train must have been the "moving force" behind the deprivation of constitutional rights. Id. Thus, to succeed on a failure to train claim under this standard, a plaintiff must show: (1) that the municipality failed to provide training to its employees; (2) that the municipality's employee violated the constitutional rights of the plaintiff; (3) that the failure to train was the "moving force" behind the plaintiff's injury; and (4) that the municipality should have been aware of the potential consequences of failing to train the employee such that the failure to do so constituted "deliberate indifference." See id. at 388-89. The court considers each in turn.

The first issue is whether the Guardian has sufficiently alleged that the County failed to train its employees.  The Guardian alleges that the County failed to provide any training to Valley Street Jail employees about treating detainees with mental illnesses.  It further alleges that Valley Street Jail employees failed to take any steps to manage Brunelle's medical care and instead restrained and isolated him.  Considered together, these allegations support a reasonable inference that the County should have either trained its employees to seek outside assistance for Brunelle's treatment or on the appropriate procedures for providing treatment themselves rather than ignoring his need for treatment.  These are sufficient allegations as to what the County failed to train its employees to do.

The second issue is whether the Guardian has adequately pleaded a deprivation of Brunelle's constitutional rights.  The court has already concluded that the Guardian has done so based on the County's failure to provide Brunelle adequate medical care.

The third issue is whether the failure to train was connected to the alleged deprivation of constitutional rights.  The Guardian alleges that the County failed to train its employees on how to manage the care of mentally ill detainees and that, as a result, the employees did not know the appropriate procedure to administer psychiatric medications to inmates with mental health issues, when to refer inmates to outside providers, and when to properly use restraints in the care of mentally ill patients.  The County's alleged failure to train its employees on these issues is directly related to Brunelle's alleged injuries in this case.  At this early

20

stage of the litigation, the allegations support an inference that, had corrections staff been properly trained on these issues, they would not have violated Brunelle's constitutional rights by failing to provide him adequate medical care.

The fourth, and final, issue is whether the County's alleged failure to train amounted to "deliberate indifference" to Brunelle's constitutional rights.  See Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005).  "A finding of deliberate indifference requires that the [municipality] have disregarded a known or obvious risk of serious harm from its failure to develop a training program" related to the practice at issue.  Id. at 28.  Most often, "[s]uch knowledge can be imputed to a municipality through a pattern of prior constitutional violations."  Id.  However, "in a narrow range of circumstances," a failure-to-train claim can succeed without showing a pattern of previous constitutional violations.  Id.  Specifically, liability without a pattern is appropriate where a violation of a federal right is a highly predictable consequence of a failure to train municipal employees with specific tools to handle recurring situations.  Id. (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 409 (1997)).  Unlike the standard under the Eighth Amendment, deliberate indifference in the failure to train context is objective. Farmer, 511 U.S. at 840-41.

Here, the Guardian has not alleged a pattern of corrections staff failing to provide proper care to inmates with mental health issues.  However, at this early stage of the litigation, the Guardian's allegations are sufficient to establish deliberate indifference through the second route.  It is a more than fair inference

that individuals with mental health issues will be detained at Valley Street Jail and that jail officials would reasonably be aware of this possibility. As the Guardian's allegations demonstrate, the treatment of detainees with severe mental health conditions is complex. It is reasonably foreseeable that the failure to train staff on how to respond to patients might result in a lack of adequate treatment that would violate the Fourteenth Amendment. Because there is a reasonable inference that the County should have known that individuals with mental health issues would be incarcerated at Valley Street Jail and that corrections staff would likely require training on how to treat them to avoid violating their Fourteenth Amendment rights, the failure to provide such training may amount to deliberate indifference.

In sum, the Guardian has adequately alleged a § 1983 claim premised on the County's failure to adequately train Valley Street Jail staff on the proper care for inmates suffering from mental health issues. The court grants the motion to amend as to this allegation.

Finally, because the court concludes the proposed amended complaint states a claim for relief and grants the Guardian's motion to amend, the County's motion for judgment on the pleadings on the grounds the original complaint failed to state a claim under the Rule 12(b)(6) standard is moot. Fujifilm N. Am. Corp., 565 F. Supp. 3d at 227.

## CONCLUSION

For the foregoing reasons, the court grants the motion to amend (doc. no. 21) and denies the motion for judgment on the pleadings (doc. no. 18) as moot.  On or before September 15, 2022, the Guardian shall electronically refile the pleading attached to the motion to amend (doc. no. 21-1) using the appropriate event in the court's electronic filing system.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 8, 2022

cc:  Counsel of Record.